CHARLES LEVENTHAL

*v.*

ABRAHAM LAZAROVITCH.

Cumberland.      Opinion July 18, 1928.

*Israel Bernstein,* for plaintiff.
*Harry S. Judelshon,*
*Edward J. Harrigan,* for defendant.

SITTING : WILSON, C. J., PHILBROOK, DUNN, DEASY, PATTANGALL, JJ.

WILSON, C. J. An action to recover for labor and materials furnished in doing the metal and roofing work in remodeling a large business block in the city of Portland into an apartment house. The declaration contains an account annexed setting forth labor and materials furnished to the amount of $3,314.17 with credits of $2,200.00, leaving a balance alleged to be due of $1,114.17; and also a money count in the usual form. The jury awarded a verdict for $1,060.38. The case is here on a motion for a new trial on the usual grounds.

The evidence discloses that a contract was entered into between the parties under which the plaintiff was to do the metal and roofing work for the sum of $2,200, which included certain specified items, and that the plaintiff also did certain other work admitted to be in addition to what was required in the contract, and for which he was entitled to extra compensation. While there was some controversy about certain small items claimed as extras, after a careful examination of the record this Court can not say the jury was clearly wrong in allowing the plaintiff compensation for substantially all the items charged in the account annexed in addition to those specified in the contract.

The main controversy arises over three items enumerated in the contract and whether the contract was violated by the defendant or abandoned by the parties and the plaintiff is entitled to compensation for the labor and materials furnished in completing the several items enumerated in the contract as though no contract had been entered into. The jury evidently disregarded the contract and allowed the plaintiff to recover under his account annexed.

The first item in dispute is connected with certain substitutes for ten ventilators furnished in place of those specified in the contract, which substitutes the defendant now claims are worthless. The plaintiff testified the substitution was done with the consent of the defendant and with his full knowledge, in which he was to a certain extent corroborated by his assistant. The jury evidently

accepted the plaintiff's version. They saw and heard the witnesses. We can not disturb the verdict on this ground.

The second item relates to a change in the ventilation or method of carrying out the fumes of seventy gas ranges in the several apartments. The contract provided for hoods over the ranges and connections with air shafts running to the roof. The building inspector of the city of Portland, however, refused to approve of this method and ordered eleven metal risers installed running up through the building to the roof to be connected directly with each gas range, and eliminating the hoods.

The defendant contended that the plaintiff agreed to make this change without extra charge, as he said the expense of installing the risers and connections would be less than the sum specified in the contract for the hoods and connections. The price specified in the contract for installing sixty-five hoods and connections was $325.

The plaintiff denied that he agreed to make the change without extra compensation and claimed that by reason of a relocation of the ranges at different points than indicated on the plans on which he based his bid for the hoods and connections, the expense of the risers with connections was much greater than for installing the hoods, and claimed in his account annexed the sum of $825.00 for making this change.

The jury must have again believed the plaintiff and found that not only he did not agree to make the change without extra charge, but that the expense was much greater than the sum for which the plaintiff had agreed in his contract to install the hoods.

If the jury believed the plaintiff's version as to this change, then the plaintiff was entitled to a fair compensation for installing the risers and connections regardless of what he agreed to install the hoods with connections for. The plaintiff claimed $825 for installing this item, or $500 in addition to what he agreed in his contract to install the hoods and connections.

The witnesses for the defendant directed their evidence chiefly to proving that the expense of installing the hoods and connections was much greater than a reasonable cost of installing the risers and connections, as supporting the defendant's contention that

the plaintiff agreed to make the substitution without additional expense. But the jury found against the defendant on this point. At least all the witnesses agreed that the expense of installing the metal risers and connections was considerably in excess of the price fixed in the plaintiff's contract for installing the hoods and connections; the defendant's witnesses estimating this extra cost as approximately $165.00 and the plaintiff's expert as $459.80.

It is impossible to compute what was a reasonable cost of this item from the record. The sum claimed by the plaintiff and the estimated cost of his expert seems large; but the jury must have accepted it, or at least the estimate of the plaintiff's witness, in place of the estimate given by the defendant's experts, who apparently did not make a thorough examination of the existing conditions. This Court can not say from the evidence that the jury was clearly wrong in rejecting the estimates of the defendant's witnesses; nor can it from the record by computation determine any sum between the estimates of the experts on each side as being the more nearly correct.

It is agreed that two certain items specified in the contract were not fully performed. The non-performance appears to have been waived so far as this case is concerned. As to the larger, for covering forty-four air shaft doors and frames, the plaintiff testified he did this work in part until stopped by the defendant, and before ordered to stop had done work thereon amounting to $78.00, for which the jury may have properly allowed him, if they believed his testimony. The balance of these two items amounting to $113 the defendant claimed should not be allowed. Evidently the jury did not allow it in their verdict; nor did the plaintiff claim it in his account annexed.

We think the plaintiff was clearly bound by his agreement to complete the items specified in his contract, for which he was entitled to receive $2,200, or if we omit the items for hoods, of $325 and for the air shaft doors, of $176.00, and elevator shaft flashings, of $15.00, he would be entitled to receive $1,684.00 under his contract.

The record does not show such a modification of the contract as would warrant its rescission or a claim of abandonment so as to

permit the plaintiff to recover on his account annexed for the items covered by the contract. He is still bound by it except as in respect to the gas range hoods and air shaft doors and elevator shaft flashings, it is shown to have been modified or waived by the parties.

The jury evidently failed to take this into consideration in awarding their verdict. The total claimed by the plaintiff for extra labor and materials, including such sums as the jury was warranted in awarding for the work done on the air shaft doors, and in constructing the metal risers and gas range connections could not have exceeded $1,229.72. If to this be added the amount due under the contract for the items completed of $1,684.00, the maximum amount the plaintiff was entitled under his contract and for extras could not, upon the record in this case, have exceeded $2,913.72. Of this amount he has received $2,200, leaving the maximum amount for which he was entitled to recover of $713.72. Unless the plaintiff shall, within ten days after receipt of the mandate of this Court, file a remittitur of all of the verdict in excess of $713.72, the motion for a new trial will be sustained.